UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| EDUARDO NAVEJAR, | ) | |
|    Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 17-1532 |
| | ) | |
| GUY PIERCE, et. al., | ) | |
|    Defendants | ) | |

MERIT REVIEW ORDER

Plaintiff currently has one claim before the Court alleging Defendants Andrew Bufford and Adrian Corley used excessive force against the Plaintiff on March 4, 2016 at Pontiac Correctional Center. *See* April 4, 2018 Merit Review Order. Specifically, Plaintiff claims Officer Bufford slammed Plaintiff's head to the ground and Officer Corely twisted Plaintiff's arms backwards and continued to twist his arms even when Plaintiff yelled that he was not resisting. *See* April 4, 2018 Merit Review Order.

Defendants have been served and they have filed an answer to the complaint. [14]. However, Plaintiff has now filed a motion for leave to amend his complaint. [21]. The motion is granted pursuant to Federal Rule of Civil Procedure 15. [21].

The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's amended complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Defendant Bufford is the only Defendant identified in both the caption and the list of Defendants in the Amended Complaint. (Mot. Amd., p. 5, 6). Plaintiff again states on March 4, 2016, Warden Guy Pierce was conducting a tour through the facility when he told Plaintiff and his cell mate "to put away the images from the table because they were on display." (Mot. Amd., p. 14). Plaintiff claimed the images were "part of my alter." (Mot. Amd., p. 14). Therefore, Plaintiff stated it was his right to keep them out for his religious practice. The Warden again told Plaintiff to remove the items, but Plaintiff said he would file a grievance. Warden Pierce told Lieutenant Eutsy to take Plaintiff to the North House. Plaintiff does not clarify if this was segregation unit.

The Court notes Plaintiff does not identify a First Amendment claim based on his right to practice his religion in his list of "violations." (Mot. Amd., p. 16-17). Therefore, it does not appear this was an intended claim. However, for clarification, Plaintiff has not articulated a First Amendment claim since he has not identified his religion, what images he had out, or how they are relevant to the practice of his religion.

Plaintiff next claims officers took him downstairs to "the cage." (Amd. Comp., p. 14). Officers planned to take Plaintiff to the north house. However, while they were waiting, Officer Garbe took a phone call and afterwards told officers to take Plaintiff to Internal Affairs (IA) on the east complex of the facility "because they wanted to speak to me." (Mot. Amd., p.14).

Plaintiff does not clarify why IA officers wanted to talk to him or if he knew why. Nonetheless, Plaintiff refused to go telling officers he had nothing to say. Plaintiff says "[i]t didn't take a rocket scientist to figure out that Guy Pierce had done that call on

2

some retaliation." (Mot. Amd., p. 15). This is the only statement in the complaint related to potential retaliation claim.

To demonstrate a First Amendment retaliation claim, a plaintiff must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir.2009) (internal quotations omitted); *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015).

Plaintiff provides no details to support an inference that the phone call was retaliatory. Plaintiff is apparently assuming Warden Pierce either made or directed the phone call since it was shortly after he was removed from his cell. However, Plaintiff does not explain why IA wanted to speak with him. If Plaintiff did not know the basis of the inquiry, how does he know it is related to his encounter with the Warden? Why did he refuse to talk? Finally, Plaintiff has not identified Warden Pierce as a Defendant in his complaint and it is unclear who Plaintiff believes is responsible for any retaliatory behavior. (Mot. Amd., p. 16).

Plaintiff next alleges he continued to refuse to go to IA, and told IA Officers Forbes and Bufford he "wasn't going calmly." (Mot. Amd., p. 15). Plaintiff says he had a right to remain silent. Plaintiff says Defendant Bufford "pulled me toward the door and I pulled back . I was standing my ground." (Mot. Amd., p. 15). Plaintiff claims there was a struggle, but "they started it first." (Mot. Amd., p. 15). Plaintiff alleges after he was cuffed up, Defendant Bufford slammed his face to the ground, called him names, and

3

tried to choke him. Plaintiff says he was not resisting and twice told Defendant Bufford to stop.

Plaintiff admits he was disciplined as a result of the incident, but claims officers "lied" about what happened. (Mot. Amd., p. 15). Plaintiff attached copies of the Disciplinary Ticket and the Adjustment Committee Report to his original complaint. Officers claimed the Plaintiff tried to spin toward an officer and break the officer's control over Plaintiff. (Comp., p. 57). Therefore, they took Plaintiff to the ground and handcuffed him. Officers also alleged Plaintiff repeatedly threatened them after he was handcuffed.

The Adjustment Committee found Plaintiff guilty of interfering with an investigation and intimidation or threats. (Comp., p. 57). However, Plaintiff did not lose good time credits as a result. (Comp., p. 58). None of the documentation indicates why IA wanted to speak with the Plaintiff.

The Fifth Amendment does give a person the right "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). Since it is unclear why IA officers wanted to talk to Plaintiff, it is unclear whether the matter pertained to anything which could incriminate Plaintiff in a criminal proceeding.

And as previously noted, whether or not Plaintiff chose to speak to the officers, Plaintiff did not have a constitutional right to refuse direct orders to leave his cell and go to internal affairs. *See Soto v Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)("[i]nmates

4

cannot be permitted to decide which orders they will obey, and when they will obey them.").

In addition, Plaintiff does not indicate he was injured as a result of the alleged use of excessive force. Nonetheless, the Supreme Court has held that the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v Gaddy*, 130 S.Ct. 1175, 1178 (2010)(internal citations omitted). Therefore, Plaintiff has alleged Defendant Bufford used excessive force when he slammed Plaintiff's head to the ground and attempted to choke Plaintiff after he was handcuffed and not resisting. Plaintiff has also added a state law tort claim of battery against Defendant Bufford.

However, Plaintiff's amended complaint does not include the necessary factors to articulate a state law claim of intentional infliction of emotional distress. *See Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006).

In addition, Plaintiff has not identified Adrian Corley as a Defendant in his amended complaint, and Plaintiff does not allege this Defendant used excessive force against him. Therefore, Defendant Corley will be dismissed.

IT IS THEREFORE ORDERED:

1) Plaintiff's motion for leave to file an amended complaint is granted pursuant to Federal Rule of Civil Procedure 15. [21].

5

2) Pursuant to its merit review of the amended complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges: a) Defendant Officer Bufford used excessive force against the Plaintiff on March 4, 2016 when Officer Bufford slammed Plaintiff's head to the ground and attempted to choke him; and b) Defendant Bufford's conducted violated the state law tort of battery. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

3) The Clerk of the Court is directed to dismiss Defendant Corley as he is no longer identified as a Defendant in the amended complaint.

4) Defendant Bufford has been served and this matter will be set for a telephone status hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure.

ENTERED this 15th day of November, 2018.

s/ James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE